## Bowen vs. D. C. & W. Argall.

In the publication of the certificate of the terms of a *limited partnership*, it was held that a mistake in the publication of the names of the partners, as Argale for Argall, would not vitiate the publication.   If there be doubt whether the mistake might not have tended to mislead, the question should be submitted to a jury.

A publication of the terms of partnership *within three days* after the registry thereof, was held a compliance with the requirement of the statute, that the same be published *immediately*, &c. provided that the publication be within the first seven days after the registry.

Albany, October, 1840.—Bowen v. Argall.

So the statute is complied with, if the terms of partnership be published in a *daily paper* once in each week for six successive weeks : each publication being deemed to represent *seven days*.

Whether placing the *general partner* upon a footing with *other creditors* in an assignment made by an insolvent firm, will be deemed contrary to the statute, *quere:* be that however as it may, such a provision will not convert *a *special partner* into a *general* [ *497 ] *partner*, and render him liable accordingly.

An error in the publication as to the amount of the sum advanced by the *special partner*, is unavailable on a writ of error, if no objection to the publication was taken on the trial of the cause.

ERROR from the New-York common pleas. *Henry F. Bowen* brought an action of assumpsit against *David C. Argall* and *William Argall*, and declared against them for goods sold and delivered, and also on the common money counts. To the declaration was attached a copy of a promissory note made by *David C. Argall* alone, dated 21st October, 1835, for the sum of $345, payable to the plaintiff six months after date. The declaration was served upon *William Argall* alone, who put in a plea of *non-assumpsit*. The plaintiff claimed to recover against *William Argall*, as a member of a *limited partnership* carrying on business under the name of *David C. Argall*, on the ground that the *act respecting limited partnerships* had not been duly complied with, and that in other respects the defendant *William Argall* had rendered himself liable for the debts of the partnership. The plaintiff produced in evidence the original certificate of partnership, which was in these words : " This is to certify, that the undersigned have in pursuance of the provisions of the revised statutes of the state of New-York, formed a limited partnership under the name or firm of *David C. Argall ;* that the general nature of the business to be transacted is that of buying and vending dry goods *in the city of New-York ;* that *David C. Argall, of said city,* is the *general partner*, and *William Argall, of said city,* the *special partner ;* that William Argall hath contributed the sum of *two thousand dollars* as capital towards the common stock, and that the partnership is to commence on the 31st August, 1835, and is to terminate on the 31st August, 1837." The certificate was dated on the 31st August, 1835, and was signed by the partners. On the 14th September, 1835, it was acknowledged before an associate judge of the court of common pleas of the city and county of New-York, and David C. Argall made affidavit before the same judge that the sum specified in the certificate had been actually and in *good [ *498 ] faith paid, *in cash*. On the day last mentioned the *clerk* of the city and county of New-York made an order that the notice required by law to be published, should be published in two newspapers, viz. *The New-York Times* and *Evening Post*, printed in the city of New-York ; and on the same day the clerk recorded the certificate, &c. in his office. The plaintiff then, after proving the signature of *David C. Argall* to the note, and reading the same

in evidence, proved that on the 16th May, 1836, *David C. Argall*, describing himself as transacting business under a limited partnership in the name of David C. Argall, made an *assignment* of all his stock in trade for the benefit of his creditors, *giving a preference* to certain creditors, among whom was his partner, *Williams Argall*, to whom it was stated he was indebted for *indorsement* in the sum of $519,01, and for *cash lent* $35, and providing besides for the repayment to William Argall of the sum contributed by him as capital towards the common stock.

Evidence was then given by the plaintiff for the purpose of showing that *William Argall* had concurred in or assented to the assignment thus executed by his general partner; and also that he had transacted business on account of the partnership in violation of the provisions of the statute on this subject. This evidence was met by rebutting testimony on the part of the defendant. The plaintiff next offered in evidence the original files of the *New-York Times* and *Evening Post* to show that the terms of the partnership had not been duly published. The defendant objected to their reception as evidence, insisting that the affidavits of the publication on file in the office of the clerk of the city and county of New-York were conclusive evidence of the publication, and that no other evidence could be received, and accordingly produced the affidavits from the files of the clerk's office : which stated that the notice or certificate of partnership had been regularly published in the *Evening Post* and *New-York Times* once in each week for six weeks successively, commencing on the 17th day of September, 1835. The *sum* specified in the certificate as published in the *Evening Post* was *five thousand dollars,* [ *499 ] *instead of *two thousand dollars*, and the names of the partners as specified in the certificate and as subscribed thereto were DAVID C. ARGALE and WILLIAM ARGALE, instead of DAVID C. ARGALL and WILLIAM ARGALL. The plaintiff again offered the original files of the papers in evidence, which though objected to by the defendant were received by the judge. From these papers it appeared that the notice or certificate of partnership had been published in the *daily* papers of the *Post* and *Times* but *six times*, to wit, on the 17th and 24th days of September, and on the 1st, 8th, 15th and 22d days of October, making in all a publication of only thirty-six days including the first and last days of publication and the intermediate time.

On the part of the defendant it was proved that on the 29th June, 1835, the parties being advised that the assignment of the 16th May preceding was invalid, Curtis, the assignee, re-assigned the property to *David C. Argall,* who on the same day executed a new assignment of the same property to Curtis. By this latter instrument no preferences were given, but the proceeds of the property were directed to be equally distributed among all the creditors of the assignor, and after satisfying such debts, to pay *William Argall* the sum contributed by him to the common stock. In the list of creditors, however,

Albany, October, 1840.—Bowen v. Argall.

the name of *William Argall* was inserted, and the sum of $519,01 was stated as due to him for *endorsements* made by him. The plaintiff objected to the introduction of this testimony, but it was received by the judge.

The plaintiff claimed to recover upon the following grounds : 1. That the publication of the terms of the partnership were insufficient : that in the publication in one of the papers the partners were named *Argale* instead of *Argall ;* that the publication was not made *immediately* after the registry of the certificate ; that it was not published *daily* for six weeks, and was not published for a sufficient length of time ; 2. That *William Argall* had transacted business on account of the partnership ; 3. That he had concurred in or assented to the assignment of May, 1836 ; 4. That the first assignment could not be rescinded and that *consequently   [ *500 ] both the re-assignment by the assignee and the second assignment were void ; and that the second assignment was void also, on the ground of its making a provision for *William Argall*.

The judge charged the jury that the certificate containing the terms of the partnership was sufficient, and had been duly published ; the questions as to whether *William Argall* had *transacted business* on account of the partnership, and whether he had *assented* to the assignment of May, 1836, he submitted to the jury upon the evidence of the case. As to the assignment itself, he instructed the jury that it was fraudulent as to creditors and voidable by them, but was valid as between the parties to it ; that a voidable deed however might be made good by matter *ex post facto ;* that under the assignment of *May*, 1836, the title to the property passed, and a trust was created, but as none of the creditors accepted the assignment and no payments had been made under it, he perceived no objection to the re-assignment by the assignee, nor to the second assignment which were executed to relieve the first assignment from what was objectionable and illegal. That in his opinion the provision of the statute that a *special partner* shall not under any circumstances be allowed to claim as *creditor*, until the claims of all the other creditors of the partnership shall be satisfied, does not apply to an endorsement for the firm, but has reference to the capital paid in by the special partner. The plaintiff excepted to the charge. The jury found a verdict for the defendants, upon which judgment was entered. The plaintiff sued out a writ of error.

*C. Judson*, for the plaintiff, insisted that the publication of the certificate of the terms of the partnership was insufficient ; that the partners were named *Argale* instead of *Argall ;* that the sum paid in by the special partner was stated to be $5000 instead of $2000 ; that the publication was not *immediately* after the registry : the registry having been made on the *fourteenth* day of September, and the publication not until the *seventeenth ;* that

the certificate ought to have been published *daily* for 36 days, [ *501 ] which would have *embraced *six weeks*, except Sundays, and at all events should have included six weeks between the first and last publication : to this point the counsel cited 1 *Wendell,* 90.

He also insisted that the *second assignment* was void as to creditors, and cited 6 *Paige,* 582. And that the charge of the judge was erroneous.

*W. S. Sears,* for the defendants in error.

*By the Court,* COWEN, J. No doubt the provisions of the 1 *R. S.* 753, 2*d ed.* prescribing the manner of instituting limited partnerships, must be substantially complied with, or the creditors may treat the members of the firm as general partners.

The objections in this case to the forms of institution, all arise upon the 9th section of the statute, which provides that " the partners shall publish the terms of the partnership when registered, for at least six weeks immediately after such registry, in two newspapers to be designated by the clerk of the county in which such registry shall be made ; and to be published in the senate district in which their business shall be carried on ; and if such publication be not made, the partnership shall be deemed general."

1. The notice in the *Post* was that David C. *Argale* and William *Argale*, both of the city of New-York, had entered into the partnership. It did not mention their place of residence more particularly, nor their place of business at all. The notice was signed David C. *Argale* and William *Argale.* It did not contain the name of *Argall* at all, nor was it shown that they were known to the public by both names. By the 4th, 5th and 6th sections of the statute, in order to form a limited partnership, the members are first to sign and acknowledge, and cause to be filed and recorded at large in the clerk's office of the county where their principal place of business shall be situated, a certificate, which shall contain, among other things, the names of all the general and special partners, distinguishing which are general and which are special partners, and their respective places of residence. Then [ *502 ] the 9th section directs the manner of publication. *The partners shall publish the terms of partnership. The form of notice is not given, but the object of it is plain ; that the public may be informed not merely of the terms, but the parties to the contract of partnership. Their names alone would doubtless satisfy the words and spirit of the section, provided they be truly given. In this instance they are not; but names very nearly the same, with the city of their residence, are given as a substitute. The christian names are correct; and the mistake doubtless arose from the printer mistaking the final L in the manuscript surnames for an E, and thus being led to print the surnames so as to give a slightly differ-

ent sound.   It is extremely difficult to imagine how the public could be misled by names so very nearly the true ones, accompanied with the superaddition of residence.   Undoubtedly the true question is whether the mistake was, under the circumstances, calculated to mislead.   In a case of doubt, the question should be put to the jury upon the circumstances.   In this case, however, I apprehend it was unnecessary.   I think it furnished a case for presuming that no one was misled, at least till the contrary was shewn.

2. It is said the notice was not published *immediately* after the registry ; that the parties waited three days.   I apprehend the statute does not mean to speak of *time* or *days* immediately following the registry, but of the *six weeks immediately after*.   The latter are its precise words.   A publication in the first week immediately ensuing the registry, duly followed up by a repetition for the next five weeks, would seem to satisfy it in this respect.

3. A publication once in each of the ensuing six weeks is sufficient.   The statute counts by weeks, taking one day, no matter which, if according to the common course of weekly publication, in each week.   Thus, the full term of 42 days and more were made out in this case.   One publication in each six consecutive weeks of seven days each, the first publication being within the first seven days after the registry, satisfies the statute in respect to time of publication.   Each single publication in each week represents and should be reckoned for seven days.   The publications are to "be in any two papers of the senate district, and by memtioning   [ *503 ] *weeks*, the statute has an obvious reference to hebdomadal publications, which are those in prevalent practice, when considered in respect to the whole state.   Notices to creditors in cases of insolvency stand on a different phraseology.   The notice is there of *a time* to show cause, *after the expiration of the six weeks preceding publication*.   Vide 1 *R. L. of* 1813, *p.* 462, § 5.   The publication must be for six successive weeks, once for each week in both cases, according to the ordinary course of publication. But in the case of insolvency, the weeks must be full before the time of showing cause.   The anonymous case cited from 1 *Wendell*, 90, must have gone on this distinction.   The learned judge who tried this cause in the court below, (the late Judge Irving,) must have been eminently qualified to decide upon the practical and common understanding of clauses like the present when used in statutes.   Much must depend on such understanding, in fixing its construction ; and I cannot but regard his decision as of considerable weight in favor of what I conceive to be the meaning on its face, and in the light of my more limited observation in this respect.   On the whole, we think the objections grounded on the want of sufficient publication were properly overruled.

With regard to such interference of William Argall in the business con-

cerns of the firm as would work a forfeiture' of the privileges of a special partner, the judge laid down the law to the jury in the terms of the 17th section of the act, and referred it to them whether the evidence brought him within those terms. I have looked through the evidence, and am of opinion it is precisely of that character which called for such a reference. He was also clearly correct in submitting the question to the jury whether William Argall had concurred in or assented to the first assignment, another act, which, according to § 22, would have been fatal to his special character, and subjected him as a general partner. · There was no direct, unimpeachable and conclusive testimony on either of these heads ; none to which the judge could, as matter of law, attach any definite influence.

[ *504 ]   In *Mills* v. *Argall*, 6 *Paige*, 577, 582, the chancellor held *th at this second assignment was contrary to the 23d section of the statute, inasmuch as it provided that William Argall should be paid his endorsement rateably with the other creditors. The section cited declares that, in case of the partnership becoming insolvent, no special partner shall, under any circumstances, be allowed to claim as a creditor, until the claims of all the other creditors shall be satisfied. The judge charged that this provision is confined, in its true construction, to the special partner's claim for capital paid in. It is not now necessary to pronounce whether this or the chancellor's construction was right; for I see nothing in the act declaring as a consequence of an assignment or other act providing for the forbidden preference, that the special partner should thereby become liable as a general one. The only consequence of the construction contended for by the plaintiff in error would, therefore, be the avoiding of the particular provision for the benefit of the other partnership creditors, in a proceeding adapted to enforce the claims of preference.

The objection as to the variance between the $2000 actually contributed, and the sum mentioned as contributed in the advertisement, viz. $5000, was not made a point at the trial; and therefore is not now noticeable. Very likely, as suggested by the counsel for the defendant in error, it has arisen from a clerical mistake in the bill of exceptions, or in copying. That it may have arisen in either way, is a material argument why the settled practice should be adhered to, of refusing to notice any point not presented specifically at the trial.

On the whole, we are of opinion that the judgment of the court below should be affirmed.