## SUPREME COURT.

THE PEOPLE, *ex rel.* JOHN KEENHOLTS, executor, &c., agt. ALBERT D. ROBINSON, County Judge, TITUS RUSHMORE, and others.

Where an *executor*, by the will, was authorized to control and manage the real estate during the minority of the devisees; to "receive the rents, issues and profits" thereof, and to expend them for certain specified uses,

*Held,* that, though called *executor,* he was the *trustee* of a valid, active trust, and, as such, had the legal, valid title, and the actual estate in the real estate, and was the only person who had the right to go on with proceedings of his testatrix, pending upon certiorari before the county judge, relative to the laying out of a private road, and the proper person to be substituted as relator in such proceedings.

There is no right of *appeal* to the county court from the verdict of a jury given upon the laying out of a *private road.* The *commissioners of highways must* lay out the road on the receiving the verdict of the jury. The appointment of *referees* by the county court, on appeal from such decision (as is authorized on appeal from the decision of commissioners of highways, on laying out a *public road* or *highway*), is *void* for want of *jurisdiction.*

*Albany General Term, Sept.,* 1858.

WM. B. WRIGHT, GOULD *and* D. WRIGHT, *Justices.*

COMMON law certiorari, issued by the supreme court, on application of Mary Keenholts to A. D. Robinson, Albany county judge, Titus Rushmore, James B. Wands and John I. Groesbeck, referees, to remove into this court, for review, the proceedings had before the referees, who were appointed by the said county judge, to hear and determine the appeal of Jew I. Jewett from the order of the commissioners of highways of the town of Guilderland, in that county, laying out a private road. From the return of the judge and referees to the writ, it appeared that Mary Keenholts, on the 16th day of December, 1854, made application to the commissioners of highways of the town of Guilderland, for the laying out of a private road across the lands of Jew I. Jewett, pursuant to chap. 174, Laws of 1853, and that thereupon the commissioners

proceeded, as required by that statute, to obtain a jury to determine as to the necessity of the private road applied for, and to assess the damages of Jewett. On the 8th day of January, 1855, a jury, selected, summoned and sworn, as required by that act, viewed the premises, heard the allegations of the parties, and such witnesses as they produced, and determined that the private road as applied for was necessary, and they assessed the damages of Jewett at the sum of $180. On the 11th day of January, 1855, the commissioners laid out and made a record of the road as applied for. On the 23d day of the same month, Jewett appealed from the order of the commissioners to said county judge, who, on the 23d day of March, 1855, appointed three of the defendants referees, to hear and determine the appeal, and on the 24th day of April, 1855, the referees reversed the order of the commissioners. Mary Keenholts, by her counsel, appeared before the referees at the time of their meeting, and objected to their jurisdiction, to hear and determine the appeal, which objection the referees overruled. After the return to the writ was filed in this court, Mary Keenholts died, leaving a will appointing John Keenholts sole executor, and authorizing him to control and manage the real estate devised during the minority of the devisees, who were respectively of the ages of eleven and thirteen years, and to " receive the rents, issues and profits" thereof, and apply them for certain specified purposes. On the petition of John Keenholts, he was substituted as relator at a special term of this court, when the cause was moved for argument by the relator. The counsel for Jewett moved to dismiss the writ, and all the proceedings, on the ground that the writ had abated by the death of Mary Keenholts, and that the proceedings could not be continued in the name of the executor. The motion to dismiss and the argument upon the merits were heard at the same time.

IRA SHAFER, *for relator.*

J. H. CLUTE and LYMAN TREMAIN, *for defendants and Jew I. Jewett.*

By the court—GOULD, Justice. There was no dispute about the facts in this case, and they sufficiently appear by the return to the certiorari upon which the case comes before us. But the points really taken on the argument are: 1st. Has this executor any right to continue the proceedings commenced by his testatrix ? By her will, the executor was authorized to control and manage the real estate during the minority of the devisees, to "receive the rents, issues and profits" thereof, and to expend them for certain specified uses. He is thus, though *called executor*, the trustee of a valid, active trust, and as such has the legal valid title and an actual estate in this real estate. (2 *Coms.* 19, 298.) It seems to me that such a trustee *has*, and is the *only* person who has, the right to go on with this proceeding. Naming him as executor (in the proceeding) does not show that he *proceeds as executor*, but, in connection with the will, shows that he is the trustee pointed out by the will; he is trustee by being executor. The other point to be decided is, had the county court jurisdiction of the matter, so that it could *appoint referees?* This must be answered by arriving at the true construction of the statutes relating to the laying out of private roads. There is doubtless some lack of precision in the words used in the statutes, as they speak of " highways," " roads," and " private roads," if not interchangeably, at least without careful discrimination. I think, however, that reading the statutes (1 *Vol. Rev. St. 4th ed., from* 1040 *to* 1048; *Laws of* 1853, *pp.* 308–9–10) will lead most persons to the conclusion that *highway* and *road* are used as nearly, if not quite, synonymous, while a private road is almost invariably *specified* as *private*. (*See* 9 *Johns.* 349.) Still I do not deem this construction absolutely essential to the decision of the case, since, taking the laws of 1853 (as above cited) in connection with section 8 of chapter 455 of laws of 1847 (*page* 584; *4th ed., Rev. St. vol.* 1, *p.* 1047, § 103), I am unable to see that the county court has power to appoint referees, or that any appeal lies to the county court, save in a case where the " determination" (or decision) for or against the laying out of a road, &c., *is made* by the *commissioners of highways*.

That their act is judicial—is a decision—is not merely founded on my understanding of the language of the statute, but is sustained by Chief Justice NELSON. (25 *Wend.* 454.) The statute contemplates the judgment of three distinct bodies of men, if desired, &c.: 1st. The *freeholders;* 2d. The *commissioners of highways;* 3d. The judges;" two of which bodies must concur in laying out, &c. (*See also* 24 *Wend.* 495.) But, in the case of a private road, the commissioners have no power to determine or decide anything. Laws of 1853 (*p.* 309, § 10) provide: "If they (the jury) shall determine that the proposed road is necessary, they shall assess, &c., and shall deliver their verdict, in writing, to the commissioners;" and by section 12 the commissioners shall annex to such verdict the application, &c., and hand the same to the town clerk, who shall file the same, and " the commissioners *shall* lay out and make a record of said road as described in the petition of the applicant." As section 17 (*p.* 310) of the same act repeals other provisions, these are the statutes now regulating appeals, and the laying out of private roads, and an appeal is strictly created by, and to be governed by, the statute. I cannot see any right of appeal to the county court, from the verdict of the jury given as to this road, and it must be adjudged that all the proceedings of that court are void for want of jurisdiction. They must be set aside.

---

## SUPREME COURT.

